UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-751-RGJ

LLOYD HAMMOND                                                              Petitioner

v.

KEVIN MAZZA, WARDEN                                                       Respondent

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Lloyd Hammond's ("Hammond") Petition for Writ of Habeas Corpus ("Petition"). [DE 1]. Respondent Warden Kevin Mazza ("Warden") responded [DE 10] and Hammond replied [DE 12]. The Magistrate Judge filed Findings of Fact, Conclusions of Law and Recommendation ("R&R"). [DE 13]. Hammond timely filed objections. [DE 14]. The matter is ripe. Having reviewed de novo the R&R, the Court **ADOPTS** the Magistrate Judge's Findings of Fact and Conclusions of Law and **OVERRULES** Hammond's objections.

## I.      BACKGROUND

Hammond was indicted for a third time on May 3, 2016, and later convicted by a Jefferson County jury for crimes arising from his involvement in the fatal shootings of William Sawyers ("Sawyers") and Terrell Cherry ("Cherry") on June 3, 2006. *Hammond v. Commonwealth*, No. 2018-SC-000236-MR, 2019 WL 6973754, at *3 (Ky. 2019) ("*Hammond II*"). On April 11, 2018, the trial court followed the recommendation of the jury and imposed a sentence of 65 years. *Id.*; [*see also* DE 10 at 143]. Hammond then appealed his conviction and sentence to the Kentucky Supreme Court. *Id.*

On June 3, 2006, Hammond and Cherry entered the home of Troya Sheckles ("Sheckles") and murdered Sawyers. *Id.* at *1. Two witnesses identified Hammond as one of the perpetrators of the burglary and murder: (1) Shaheed Al-Uqdah ("Al-Uqdah"), who later testified that he accompanied Hammond and Cherry to Sheckles' home; and (2) Sheckles, Sawyers' girlfriend.[1] *Id.* Evidence also revealed that shortly after the events on June 3, 2006, Hammond murdered Cherry to keep him from testifying about his involvement in the crimes. *Id.* Hammond was eventually charged with the murders of Sawyers and Cherry, as well as the other crimes that occurred during the burglary. *Id.* Two weeks after Cherry was murdered, "Kerry Williams ("Williams") was shot and killed while standing on his front porch talking to visitors. Hammond was identified as the gunman and was indicted for that murder as well."[2] *Id.*

Before Hammond could be tried, the Commonwealth moved to dismiss all charges without prejudice because Sheckles, the only remaining eyewitness to Sawyers' murder, could not be located. *Id.* The Commonwealth later found Sheckles, and Hammond was reindicted. *Id.* On March 29, 2009, also before Hammond could be tried, Sheckles was shot and killed as she sat in a park near her home. *Id.* Eventually, Hammond's case went to trial but ended in a mistrial when a potential juror disrupted the proceedings. *Id.* "Over Hammond's objection, the trial court rescheduled the case for trial and consolidated it with the Williams murder case." *Id.*

A joint trial on all charges was held in 2010. *Id.* During the trial, the Commonwealth introduced audio recordings of Sheckles' prior statements to police. *Id.* Ordinarily, Sheckles' out-of-court statements would be inadmissible as hearsay in that their admission would violate

---

[1] While Sheckles did not identify Hammond as one of the perpetrators initially, she later identified him after seeing his image on a television report about the crime. *Hammond II*, at *1.

[2] The Kentucky Supreme Court noted that Hammond's initial indictment included the murder of Kerry Williams but that the charge was severed from later indictments and is not included in the present appeal. *Hammond II*, at *1.

Hammond's Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U.S. 36, 62 (2004). *Id.* But the Commonwealth claimed that Hammond "acquiesced to Sheckles' murder to prevent her from testifying and therefore her statements were admissible under the forfeiture-by-wrongdoing exception to the hearsay rule." *Id.* The trial court ultimately admitted the statements. *Id.*

Al-Uqdah also testified at the 2010 trial after entering into a plea agreement with the Commonwealth.[3] *Id.* at *2. In his trial testimony, Al-Uqdah claimed he rode in the back seat of a vehicle as Hammond and Cherry were discussing the plan to steal drugs from and kill Sawyers. *Id.* He testified that he waited in the car while Hammond and Cherry went inside Sheckles' house and that when the men returned, Hammond claimed he shot Sawyers. *Id.* Al-Uqdah also testified that he was present when Hammond shot Cherry. *Id.*

At the conclusion of the 2010 trial, Hammond was convicted of three counts of murder, first-degree burglary, first-degree unlawful imprisonment, and retaliating against a witness in the legal process. *Id.* The trial court sentenced him to life without parole. *Id.* at *3.

Hammond then appealed his conviction to the Kentucky Supreme Court. *See Hammond v. Com.*, 366 S.W.3d 425 (Ky. 2012) ("*Hammond I*"). The Kentucky Supreme Court reversed and remanded the case for a new trial on two grounds: (1) Hammond was deprived of a fair trial due to the improper joinder of the Williams murder charge with the Sawyers and Cherry murder charges and other charges arising from the events that occurred on June 3, 2006; and (2) Sheckles' recorded statements were improperly admitted because the trial court's findings on the admissibility of the evidence were not supported by substantial evidence. *Id.* The case was then

---

[3] In his plea agreement, Al-Uqdah admitted to facilitating the killing of Cherry and agreed to a five-year prison sentence. The Kentucky Supreme Court noted that Al-Uqdah was initially charged with Cherry's murder and that an additional year was added to Al-Uqdah's sentence after he violently attacked two jailers. *Hammond II*, at *2 n. 2, 3.

remanded to the Jefferson Circuit Court for a new trial. *Id.*

Before retrial, however, the trial court held an evidentiary hearing on the admissibility of Sheckles' recorded statements. *Hammond I*, at *2. Following the hearing, the trial court held that the Commonwealth had not met its burden of proof and denied the motion to admit Sheckles' recorded statements. *Id.* The trial court found that all the information "solidly" supported admitting Sheckles' statements but concluded that it was confined by the Kentucky Supreme Court's 2012 opinion to deny admission. *Id.* The Commonwealth then moved to dismiss the case and filed an interlocutory appeal. *Id.* The Kentucky Court of Appeals reversed the trial court's decision, "holding that the trial court's evidentiary hearing provided sufficient grounds to admit the statements under KRE 804(b)(5) because the evidence was properly authenticated and defense counsel had the opportunity to cross-examine the officers." *Id.* After the Kentucky Court of Appeals determined that Sheckles' statements were admissible in future proceedings, Hammond sought discretionary review from the Kentucky Supreme Court, which was denied. *Id.*

On May 3, 2016, Hammond was indicted, for the third time, for the murders of Sawyers and Cherry, for unlawfully restraining Sheckles while he burglarized her home, and for retaliating against a potential witness, Cherry. *Hammond II*, at *3. This third indictment came down after nearly ten years during related trials and appeals regarding Sheckles' murder.[4] *Id.*

During a January 2017 pretrial hearing in the case, the parties discussed Al-Uqdah's availability and competency to testify as a witness. *Id.* "His attorney informed the trial court that he was in custody on unrelated charges and that his competency was being evaluated." *Id.* The

---

[4] The Kentucky Supreme Court noted that Dejuan Hammond and Steven Pettway were convicted of the murder of Sheckles. In opinions affirming their murder convictions, the Kentucky Supreme Court stated that the evidence at trial was that the men killed Sheckles to keep her from testifying against Lloyd Hammond, Dejuan's brother, regarding the murder of Sawyers. *Hammond II* at *3 n.5; *See also Pettway v. Commonwealth*, 470 S.W.3d 706 (Ky. 2015); *and Hammond v. Commonwealth*, No. 2015-SC-000263-MR, 2016 WL 3371054 (Ky. 2016).

trial court permitted Hammond to access to Al-Uqdah's mental health records.  *Id.*  Before the 2018 trial, the trial court issued a warrant for arrest of a Disobedient Witness for Al-Uqdah and the Louisville Metro Police Department (LMPD) made numerous attempts to locate Al-Uqdah. *Id.*  Because LMPD was unable to locate Al-Uqdah, the Commonwealth made a motion during trial to admit his previous 2010 trial testimony on grounds he was an unavailable witness under KRE 804(a)(5).  *Id.*  The trial court admitted both Al-Uqdah's previous trial testimony and Sheckles' recorded statements to police.  *Id.*

After six hours of deliberation, the jury found Hammond guilty of the wanton murder of Sawyers, facilitation of the Cherry murder, first-degree burglary, first-degree unlawful imprisonment, and retaliating against a participant in the legal process for murdering Cherry.  *Id.* Hammond was sentenced to sixty-five years imprisonment.  *Id.*  Hammond then directly appealed his conviction to the Kentucky Supreme Court.  Hammond's counsel raised two claims of error. *Id.*  The Kentucky Supreme Court affirmed Hammond's judgment of conviction and sentence in its entirety.  *Id.* at *11.  Hammond, through counsel, then filed the instant 28 U.S.C. § 2254 petition [DE 1] and his memorandum supporting his petition.  [DE 1-7].  The Warden responded [DE 10], and Hammond replied.  [DE 12].

Under 28 U.S.C. §§ 636(b)(1)(A) & (B), the Court referred this matter to Magistrate Judge Regina S. Edwards.  [DE 3].  After considering the warden's response, Hammond's reply, and the record, the Magistrate Judge denied the Petition and declined to issue a Certificate of Appealability.  [DE 13].  Hammond timely objected.  [DE 14].

## II.    STANDARD

a.    Standard of Review

A district court may refer a motion to a magistrate judge to prepare a report and recommendation.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).  "A magistrate judge must promptly conduct the required proceedings . . . [and] enter a recommended disposition, including, if appropriate, proposed findings of fact."  Fed. R. Civ. P. 72(b)(1).  This Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  The Court need not review under a de novo or any other standard those aspects of the report and recommendation to which no specific objection is made and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Thomas v. Arn*, 474 U.S. 140, 149–50, 155 (1985).

A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic."  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted).  A general objection that fails to identify specific factual or legal issues from the R&R is not permitted as it duplicates the magistrate judge's efforts and wastes judicial resources.  *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations.  28 U.S.C. § 636(b)(1)(C).

Hammond's Objections to the R&R are largely reiterations of arguments made in his initial Habeas Petition.  [*Compare* DE 1 *with* DE 14].  An "objection . . . that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge."  *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017) (citing *Howard*, 932 F.2d at 509 ("A general objection to the entirety of the magistrate's report has

6

the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless.").  As a result, Hammond's general objections and repetition of the arguments made in his initial Petition cannot qualify as objections.  Thus, the Court need not review de novo the Magistrate Judge's report on these Objections.  *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2 (W.D. Ky. Mar. 27, 2018).

Even though the Court need not conduct a full de novo review, the Court has considered the merits of Hammond's Objections and accepts the Magistrate Judge's proposed findings and recommendations as well reasoned.

  b. <u>Standard for Relief from a State Conviction under Federal Habeas Statute</u>

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts.  *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  28 U.S.C. § 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is "difficult to meet and [is a] highly deferential standard . . . ."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted).  When the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may

not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly." *Williams

v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010).

Instead, the Court must ask "whether the state court's application of clearly established federal law

was objectively unreasonable." *Williams*, 529 U.S. at 409.

For a state court's application of law to be "unreasonable," it must be more than merely

"erroneous" or "incorrect"; it must be "objectively unreasonable." *Wiggins v. Smith*, 539 U.S.

510, 520 (2003) (internal quotation marks and citations omitted). "The threshold for

'unreasonableness' is 'substantially higher' than it is for incorrectness . . . satisfied only when a

state-court decision 'was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Thurmond

v. Carlton*, 489 F. App'x 834, 836–37 (6th Cir. 2012) (internal citations omitted).

A state court decision is not contrary to United States Supreme Court precedent simply

because it does not specifically cite Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002).

Indeed, the state court does not even have to be aware of the controlling Supreme Court precedent,

so long as neither the reasoning nor the result of the state court decision contradicts that precedent.

*Id.* at 8; *Brown v. Bobby*, 656 F.3d 325, 3321 (6th Cir. 2011).

As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state

evidentiary record for that of the state trial court unless the state determination is unreasonable.

*Rice v. Collins*, 546 U.S. 333, 341–42 (2006). This subsection applies when a petitioner challenges

the factual determinations made by the state court. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir.

2001) (challenging the state court's determination that the evidence did not support an aiding and

abetting suicide instruction); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (challenge to state court's factual determination that Sheriff has not seen letter before Clark's trial).

## III.    DISCUSSION

Hammond timely objected to the Magistrate Judge's R&R on both of his claims: (1) that the admission of Al-Uqdah's recorded testimony violated his Confrontation Clause rights; and (2) the admission of Sheckles' recorded interviews violated his Confrontation Clause rights.  [DE 14 at 437-60].  He also requests an evidentiary hearing and objects to the Magistrate's denial of a certificate of appealability.  [*Id.* at 460–64].

### A.  First Objection: Admission of Al-Uqdah's Prior Testimony

In his Petition, Hammond asserts as claim one: "Lloyd Hammond's Confrontation Clause rights were violated when, contrary to or in an unreasonable interpretation of federal law, the court held that the Commonwealth had done enough to secure the attendance of its critical witness, Shaheed Al-Uqdah, to establish that he was "unavailable" to testify at trial, and admitted Mr. Al-Uqdah's [recorded] hearsay testimony."  [DE 1 at 6].  Hammond argued that the Kentucky Supreme Court unreasonably applied the Confrontation Clause and the witness unavailability standard when it held that the prosecution met their duty of good faith in attempting to find Al-Uqdah, and upheld the trial court's admission of Al-Uqdah's recorded testimony from Hammond's prior trial.  [DE 1-7 at 95].  Hammond now objects to the R&R's "review of the facts concerning Mr. Al-Uqdah's hearsay testimony and the judge's legal conclusions concerning Mr. Hammond's constitutional claim."  [DE 14 at 438].

To begin, while Hammond states he objects to the Magistrate Judge's factual review, he does not point to specific factual findings by the Magistrate that he objects to.  [*Id.*].  He points to the R&R findings on Al-Uqdah's testimony and recites his own factual background but does not

specifically identify which of the R&R's findings of facts he objects to.  [*Id.* at 437-48].  His objection does not appear to be towards the facts themselves, but to the state court's finding—and the R&R's subsequent identical finding—interpreting the facts.  [*See id.*].  The R&R, when setting forth the background, explicitly adopts the state court factual findings.  [DE 13 at 419].  In his Petition, Hammond did not object to the state court factual findings.  [*See* DE 1; DE 1-7].  Hammond's objection to the Kentucky Supreme Court's findings thus does not sufficiently assert an objection to the Magistrate Judge's finding of the facts.  *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("absent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."); *see also Howard*, 932 F.2d at 509 ("A district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report." (internal citation omitted)).  And Hammond's argument does not rebut the "presumption of correctness by clear and convincing evidence."  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)).  Still, for the purposes of the below analysis and without an objection from the Warden, the Court assumes Hammond's submitted facts—none of which directly contradict the R&R's finding—are true.

Hammond argues that the trial court's admission of Al-Uqdah's recorded testimony from Hammond's earlier trial violates his confrontation clause rights.  [DE 14 at 137-48].  He argues that the list of efforts described by the Kentucky Supreme Court "gave the prosecution more credit than it was due" since "the work itemized by the court amounted to a few hours at most, spread over several months."  [*Id.* at 441-42].  His argument goes to the reasonableness of the Kentucky Supreme Court's finding on whether the lengths the Commonwealth put in met the "reasonableness" standard for the prosecution's "duty of good faith."  [*Id.* at 437–48].

In making his argument, Hammond does not point to any error in the R&R, but only repeats his objection to the state court's decision. [*Id.*]. The Court need not consider an objection that merely restates the arguments set forth in a habeas petition. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) (observing that "[a]n objection that does nothing more than state a disagreement with a [magistrate judge's] suggested resolution, or simply summarizes what has been presented before, is not an objection" under 28 U.S.C. § 636(b)(1)). Still, the Court will consider Hammond's objection on the prosecution's good-faith effort.

"[T]estimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant." *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004) (citing *Crawford*, 541 U.S. at 59, 68 (2004)). "[A] witness cannot be deemed unavailable for purposes of the [unavailability] exception unless the government has made a good faith effort to obtain her presence at the trial proceedings." *Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007). "The government's efforts are assessed using a reasonableness standard, with the government bearing the burden of establishing that reasonable efforts were undertaken." *Johnson v. Rapelje*, No. 17-1230, 2017 WL 8159213, at *3 (6th Cir. Sept. 28, 2017) (citing *Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980), *abrogated on other grounds*; *and Crawford*, 541 U.S. 36).

Only the reasonableness of the good-faith effort by the prosecution is at issue. [*See* DE 14]. Hammond argues that twelve hours after trial Al-Uqdah was found at a White Castle that the frequented and that the prosecution's detective never found out Al-Uqdah was in jail after the first trial so never tried to find him there or at the home address he provided when he was arrested. [*Id.* at 437-48]. And as in his Petition, Hammond relies heavily on *Cook v. McKune*, 323 F.3d 825

(10th Cir. 2003), to support his objection to the R&R.  [DE 13 at 427; DE 14 at 444-48].  The Magistrate Judge considered this argument, reasoning that the Kentucky Supreme Court also considered *Cook* and the state court concluded that although the *Cook* factors establish Al-Uqdah as an important witness, the Commonwealth put forth sufficient effort to meet its good-faith burden.  [DE 13 at 427-28].  Magistrate Judge Edwards considered the Kentucky Supreme Court's analysis of the Commonwealth's efforts, including:

> (1) going to [Al-Uqdah's] last known residence several times including on January 29, 2018, before trial testimony began; (2) contacting two family members who the detective once spoke with at the residence; (3) making other officers in his unit aware of the arrest warrant; (4) searching other areas in Louisville including a White Castle that Al-Uqdah often visited; (5) messaging his partner before the January 31, 2018 hearing asking him to search for Al-Uqdah at an intersection he frequents; and (6) going to a location provided by the defense in search of Al-Uqdah on the night before the January 31, 2018 hearing.

[*Id.* at 428-29][5]; *Hammond II*, at *4.  The R&R concludes that Hammond did not demonstrate that the Kentucky Supreme Court's application was "objectively unreasonable" and that taking "issue with how the Kentucky Supreme Court construed the Commonwealth's efforts . . . is not enough to reach" the standard.  [DE 13 at 428-29].

In *Cook*, the tenth circuit noted:

> If the state is allowed to prove its case using a transcript of prior testimony, rather than live testimony, the defendant certainly loses the chance to have the factfinder view the witness's demeanor, and he may also lose the chance to make the witness face him as the witness testifies.

---

[5] Hammond argues that this list "credits the same action twice" by including number four and number six, because the location in number six was the White Castle in number four.  [DE 14 at 442].  But number four states that the detective searched "other areas in Louisville including a White Castle."  *Hammond II* at *4.  Even Hammond's recitation of the facts includes that "[o]n January 29 and 30" the detective looked for Al-Uqdah "at a White Castle restaurant that he frequented" and that "[t]he detective vised one other location the night of January 30."  [DE 14 at 440].  Thus the Kentucky court's consideration of the White Castle visit in number six is different from that in number four.

*Cook*, 323 F.3d at 832.  But while Al-Uqdah did not testify live, as the Kentucky Supreme Court explained, "the jury was able to watch the recorded sworn testimony from the prior trial." *Hammond II*, at *5.  That court reasoned, "while perhaps not as valuable as live testimony, the recorded testimony still allowed the jurors in the present case to assess the witness's demeanor in a courtroom setting."  *Id.*  The Kentucky court further distinguished this case from *Cook* in considering that "Al-Uqdah also had to face Hammond as he testified in the 2010 trial, whereas in *Cook* the prior testimony was simply a transcript from a preliminary hearing."  *Id.*

Thus, considering the efforts taken by the prosecution, the fact that the jury watched the recorded sworn testimony from the prior trial, and that Hammond had the opportunity to face and cross examine Al-Uqdah in his earlier trial, the Court agrees with the Kentucky Supreme Court and the R&R.  Hammond's argument on the conclusion reached by the state courts does not rise to the level of "objectively unreasonable" and his confrontation clause rights were thus not violated.  *See* 28 U.S.C. § 2254(d); *and Bryant v. Westbrooks*, No. 3:15-0685, 2018 WL 4210784, at *27 (M.D. Tenn. Sept. 4, 2018), *report and recommendation adopted*, No. 3:15-CV-00685, 2018 WL 5255281 (M.D. Tenn. Oct. 22, 2018) ("Although Petitioner contends that the prosecution could have done more, that is not the standard.  The standard is that the prosecution make a good faith effort to secure a witness—not that it make every effort.").

Furthermore, this Court does not review state court decisions on state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988) ("[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding."). And it is not this Court's place to review or reevaluate the state court's ultimate conclusion unless it is objectively unreasonable.  *See Franklin v. Bradshaw*, 695 F.3d 439, 446 (6th Cir. 2012)

(federal courts' "review does not extend, however, to the state court's conclusions"); *Williams*, 529 U.S. at 411 ("federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). The Court thus finds that the Magistrate Judge did not err in her application of clearly established federal law and her analysis of Hammond's claim on the admission of Al-Uqdah's testimony.  Hammond's objection is overruled.

### B.  Second Objection: Admission of Prior Recorded Statements

In his Petition, Hammond asserts as claim two: "Mr. Hammond's Confrontation Clause rights were violated when, contrary to federal law, the trial court admitted the recorded interviews of Troya Sheckles under the 'forfeiture-by-wrongdoing' exception to the hearsay rule." [DE 1 at 8].  The R&R first examines whether Hammond presented this claim to the Kentucky Supreme Court.  [DE 13 at 429-33].  It analyzes the considerations for this determination and concludes that Hammond exhausted his available state remedies.  [*Id.*].  The R&R next analyses Hammond's claim that the Kentucky Supreme Court unreasonably applied clearly established federal law—the Confrontation Clause—in allowing Sheckles' statements.  [*Id.* at 431–33].  Hammond objects to the R&R's "factual findings concerning Ms. Sheckles's [sic] hearsay testimony" and its conclusion that the Kentucky Supreme Court's decision on admitting Sheckles' recorded interview was not an unreasonable application of clearly established federal law.  [DE 14 at 448-60].  He "asserts that the prosecution's investigative documents, notwithstanding the expedient of having detectives read them into the record, did not constitute sufficient and reliable evidence of the foundation elements to justify admission of Ms. Sheckles's [sic] statements under a forfeiture-by-wrongdoing theory."  [*Id.* at 449].

Again, the Court notes that Hammond's objection to the R&R simply reiterates his original objection in the Petition. In an abundance of caution, under the same analysis as the first claim, the Court still considers this objection.

The Court also notes that Hammond's objection to the R&R's factual findings under this claim is identical to his objection to the R&R's factual findings under his first claim—he does not identify specific factual disagreements and only submits his own factual statement. The Court's analysis is the same: Hammond's objection to the Kentucky Supreme Court's findings does not sufficiently assert an objection to the Magistrate Judge's finding of the facts. Still, the Court assumes Hammond's submitted facts true for this analysis.

"[T]estimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant." *Cromer*, 389 F.3d at 671 (citing *Crawford*, 541 U.S. at 59, 68). Under the "forfeiture-by-wrongdoing" rule, "a defendant forfeits his right to confront a witness who he makes unavailable through his own wrongdoing." *William-Salmon v. Skipper*, No. 21-1792, 2022 WL 17569529, at *3 (6th Cir. Aug. 24, 2022). This rule is codified in Kentucky Rule of Evidence 804(b)(5). To invoke this exception, the prosecution must prove by a preponderance of the evidence that the defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." *Giles v. California*, 554 U.S. 353, 367 (2008) (citing Fed. R. Evid. 804(b)(6)); *see also Davis v. Washington*, 547 U.S. 813, 833 (2006).

Detectives recorded interviews with Sheckles in 2006, in which she discussed the death of Sawyers. *Hammond II*, at *1. Sheckles was murdered before Hammond's 2010 trial. *Id.* As proof that Hammond was involved in Sheckles' murder, the Commonwealth submitted "an eighty-

four-page set of documents pertaining to the police investigation of the Sheckles murder." *Id.* at

*6. The trial court admitted Sheckles' interviews. *Id.* After Hammond's 2010 trial ended in his

conviction, the Kentucky Supreme Court reversed Hammond's conviction in part based on the

admission of Sheckles' testimony and a finding that the evidence to support Hammond was

involved in Sheckles' murder was insufficient:

> Because the trial court's findings with respect to the forfeiture by wrongdoing
> doctrine were based exclusively on the unauthenticated documents tendered by the
> Commonwealth without any evidentiary foundation, we conclude that they are not
> supported by substantial evidence as required . . . [Furthermore] [w]e have been
> provided no citations to the record, such as it is, to review what that "evidence" is,
> short of sifting through the eighty-four pages of documents. . . . That we cannot do.

*Hammond I*, at 431-34; *Hammond II*, at *7. The Kentucky Supreme Court remanded the case for

an evidentiary hearing at which detectives read the same evidence—documents from their

investigation into Hammond—into the record. *Hammond II*, at *7. The trial court denied

admission of the evidence this time, and the Kentucky Appellate court reversed, reasoning that the

evidence was now authenticated. *Id.* The Kentucky Supreme Court upheld this decision, stating

> The Court of Appeals reversed the trial court's decision, holding that the trial
> court's evidentiary hearing provided sufficient grounds to admit the statements
> under KRE 804(b)(5) because the evidence was properly authenticated and defense
> counsel had the opportunity to cross-examine the officers. . . .
> A fair reading of the trial court's order denying admissibility suggests that the court
> felt compelled to deny admissibility based on its misunderstanding of the directives
> from this Court, despite the trial court's belief that the evidence was "substantial,
> credible, and well-founded.". . .
> Based on the information available in this record, we find substantial evidence
> supported the trial court's initial decision to admit Sheckles's [sic] statements . . .
> The only contrary evidence offered by Hammond consisted of the criminal records
> of witnesses and this did not meet his burden. Simply put, the Commonwealth's
> evidence was more convincing than Hammond's evidence . . .
> On remand, the Commonwealth authenticated the documents and evidence it
> presented to the court. Hammond did very little to challenge the Commonwealth's
> evidence. Substantial evidence supported admitting Sheckles's [sic] statements and
> accordingly we find no error.

*Id.* at *2, *11.

In her analysis, the Magistrate Judge found that Hammond "failed to demonstrate how the [state] Court's decision was an 'objectively unreasonable' application of Supreme Court case law surrounding the Confrontation Clause, including *Crawford, Giles,* and *Davis.*" [DE 13 at 423]. In a repeated and thus improper argument, Hammond asserts that the reading of the investigative documents should not evade the Confrontation Clause, because authentication does not vest documents with reliability or make them substantial evidence. [DE 14 at 458-59 (citing *Davis*, 547 U.S. at 826)]; *see also VanDiver*, 304 F. Supp. at 937 ("[a]n objection that does nothing more than state a disagreement with a [magistrate judge's] suggested resolution, or simply summarizes what has been presented before, is not an objection" under 28 U.S.C. § 636(b)(1))). But that is not what happened here. In evaluating whether there was evidence for forfeiture of wrongdoing, the Kentucky Supreme Court found the documents could not serve as evidence of wrongdoing precisely because they were unauthenticated—not because of their contents.[6] *Hammond I*; *Hammond II*. Once the documents were authenticated, the contents could be properly considered by the trial court, which in turn had found the content credible after acknowledging the question of credibility of the police informants. *Hammond II*, at *11. In other words, the authentication was to "ensure that the document is what it purports to be, not that the contents of the document are 'necessarily true.'" *Rexha v. Gonzales*, 165 F. App'x 413, 419 (6th Cir. 2006). And when the trial court denied admission of the documents the second time, this was based on a

---

[6] The first time the Kentucky Supreme Court considered the issue, it did not look at the content of the documents:

> Without a stipulation by [Hammond], it was incumbent upon the Commonwealth to establish that the documents submitted to the trial court were, in fact, what they were purported to be and that the information upon which it relied to make its case was credible.
> . . .
> We have been provided no citations to the record, such as it is, to review what that 'evidence' is, short of sifting through the eighty-four pages of documents.

*Hammond I*, at 433-34.

misunderstanding about the Kentucky Supreme Court's ruling and what it required. *Hammond II*, at *2, 11 ("A fair reading of the trial court's order denying admissibility suggests that the court felt compelled to deny admissibility based on its misunderstanding of the directives from this Court").

The Court thus finds that the Magistrate Judge did not err in her application of clearly established federal law and her analysis of Hammond's claim on the admission of Sheckles' testimony. Hammond's objection is overruled.

### C. Evidentiary Hearing

In his Petition, Hammond requested an evidentiary hearing. [DE 1-7 at 71]. The R&R finds no reason warranting an evidentiary hearing. [DE 13 at 424-26].

Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that":

> (A) The claim relies on—
>> (i) A new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) A factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) The facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

Developing the factual basis of a claim typically requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

"[B]ald assertions and conclusory allegations do not provide sufficient grounds to warrant requiring . . . an evidentiary hearing." *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006). The Supreme Court has instructed the reviewing court to "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). "[I]f the

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 474. The decision of whether to hold an evidentiary hearing is within the discretion of the district court. *Id.*

The R&R concludes that no evidentiary hearing is warranted because Hammond's claims were adjudicated on the merits and because Hammond failed to identify a reason why an evidentiary hearing is necessary here. [DE 13 at 424-26]. Hammond argues the Magistrate erred in her analysis because adjudication on the merits does not bar the Court from an evidentiary hearing. [DE 14 at 460-62]. While the Court has discretion to hold an evidentiary hearing where the facts were developed in state court, this argument has no bearing on the fact that Hammond has not substantiated his request for an evidentiary hearing. In his petition, Hammond did not explain which facts need to be developed or which claim requires an evidentiary hearing. [*See* DE 1]. Hammond's new argument in his objections, that he developed the factual bases on both claims and that Al-Uqdah's should testify at an evidentiary hearing, is inappropriate for this Court's consideration. *See Murr*, 200 F.3d at 902 n.1 ("absent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."). Still, an evidentiary hearing may be held only when the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002). Hammond's argument is insufficient to entitle him to an evidentiary hearing because "[n]o material facts are in dispute with regard to any of the claims stated in the petition, and, for the reasons stated above, none of the claims presented is a candidate for habeas relief." *Griffin v. Berghuis*, 298 F. Supp. 2d 663, 678 (E.D. Mich. 2004).

The Court thus agrees with the Magistrate's conclusion and overrules Hammond's objection.

### D.  Certificate of Appealability

Finally, Hammond generally objects to the Magistrate Judge's recommendation that a Certificate of Appealability ("COA") be denied on each claim.  [DE 14 at 463-64].

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A COA may issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  "Where a district court has rejected the constitutional claims on the merits . . .  [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*, 529 U.S. at 484.  When "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Hammond argues that his prior arguments "should demonstrate at least that jurists could conclude that the issues raised are adequate to deserve further review."  [DE 14 at 463-64].  He notes that the Kentucky Court of Appeals and Kentucky Supreme Court considered his claims and that "the Kentucky Supreme Court has taken conflicting positions on the matter of the forfeiture-by-wrongdoing issue in particular."  [*Id.*].  He argues that those conflicting positions imply that "the Supreme Court's reasonable jurists can be said to have disagreed with their own earlier resolution of the legal question."  [*Id.*].  But the Kentucky Supreme Court did not disagree with its

own resolution. Neither did it disagree with the Kentucky Appellate Court or the trial court on the resolution of the legal question at issue. Rather, as discussed above, the trial court found unauthenticated documents credible and admitted them as proof. *Hammond II*, at *2, *11. The Kentucky Supreme Court found the unauthenticated documents could not be admitted—and thus could not be evaluated for credibility—and the trial court misunderstood this direction as suggesting the authenticated documents were not credible. *Hammond I*, at 431-34; *Hammond II*, at *2, *7, *11. When the trial court did not admit the documents after authentication, the Appellate Court recognized the trial court's misunderstanding. *Hammond II*, at *2, *11. Instead of disagreeing with itself or the trial court, the Kentucky Supreme Court upheld the trial court's decision on credibility once the documents were authenticated. *Id.* The Kentucky trial court, Appellate Court, and Supreme Court agreed with one another. Thus "the Supreme Court's reasonable jurists" cannot "be said to have disagreed with their own earlier resolution." [DE 14 at 463-64].

The Court decided Hammond's claims on the merits. Hammond's arguments do not provide any additional basis "that reasonable jurists would find the district court's assessment of any of the constitutional claims debatable or wrong." *Id.* Thus a certificate of appealability is denied on each claim.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS ORDERED**:

1. The Court **ADOPTS** the Magistrate Judge's R&R [DE 13];

2. The Court **OVERRULES** Hammond's objections [DE 14] to the Magistrate Judge's Recommendations;

3. The Court **DISMISSES WITH PREJUDICE** Hammond's Petition [DE 1];

4.   The Court will not issue a certificate of appealability;

5.   The Court will enter a separate Judgment.

Rebecca Grady Jennings, District Judge
United States District Court

May 22, 2023

Copies to:      Counsel of record
                *pro se* Petitioner

22